DELORES F. BIRCK *et al.*, Plaintiffs-Appellants, v. THE CITY OF QUINCY, Defendant-Appellee.

Fourth District   No. 4—92—0515

Opinion filed February 11, 1993.

David J. Kupets, of Becker, Baizer & Rapoport, of Highland Park, for appellants.

James L. Palmer, of Scholz, Staff & Palmer, of Quincy, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiffs Delores F. Birck and Richard Birck appeal from an order of the circuit court of Adams County granting summary judgment in favor of defendant City of Quincy. Plaintiffs sought to recover damages allegedly caused by defendant when Delores tripped on a sidewalk where there was a difference in the levels of two concrete slabs. It was alleged defendant was negligent (1) for failing to repair an unreasonably unsafe condition of which defendant knew or should have known, (2) by failing to provide a reasonably safe area of travel across property within its control, and (3) improperly maintaining an uneven condition in the sidewalk and permitting the condition to exist where defendant knew or should have known that it existed and was unreasonably dangerous. In count II of the amended complaint, Richard sued for loss of consortium.

On appeal, the only issue raised is whether there exists a genuine issue of material fact such that the entry of summary judgment was erroneous. There seems, however, to be very little dispute as to the facts, for the purpose of this appeal, and it is the trial court's application of the law to those facts to which plaintiffs most strongly object. Plaintiffs argue that the trial court erred by finding that the unevenness in the level of the concrete slab was so slight that it would not support an action under the law of Illinois and that, as a matter of law, Delores' own negligence was a contributory fault of her injuries exceeding 50% of the proximate cause and barring recovery by plaintiffs. Plaintiffs also maintain there is a question of fact as to whether defendant had constructive notice of the condition. We affirm.

A summary judgment may be granted pursuant to section 2—1005(c) of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c)) if the pleadings, affidavits, exhibits, depositions, and admissions are liberally construed in favor of the nonmovant and still demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 357-59, 543 N.E.2d 1304, 1307-08.)

The trial court may draw inferences from undisputed facts, but summary judgment should be denied where reasonable persons may draw divergent inferences from undisputed facts. (*Pyne*, 129 Ill. 2d at 358, 543 N.E.2d at 1308.) However, summary judgment may be granted if all the evidence is before the court and, upon such evidence, the trial court would be required to direct a verdict. (*Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500.) The entry of a summary judgment is not a matter resting in the trial court's discretion. (*Shull v. Harristown Township* (1992), 223 Ill. App. 3d 819, 824, 585 N.E.2d 1164, 1167.) Therefore, the propriety of granting a summary judgment is reviewed as a question of law with the reviewing court reconsidering the facts and the law related to the case in determining whether any genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law. (*University of Illinois v. Continental Casualty Co.* (1992), 234 Ill. App. 3d 340, 343, 599 N.E.2d 1338, 1341; *Shull*, 223 Ill. App. 3d at 824, 585 N.E.2d at 1167; *O'Hara v. Holy Cross Hospital* (1989), 185 Ill. App. 3d 694, 699, 542 N.E.2d 11, 14, *aff'd* (1990), 137 Ill. 2d 332, 561 N.E.2d 18.) Although plaintiffs are not required to prove their cases as if at trial in order to refute defendant's motion for summary judgment, plaintiffs must provide some factual basis to support their claims and may not resist the motion for summary judgment by arguing that defendant must negate their cases. *West v. Deere & Co.* (1991), 145 Ill. 2d 177, 182, 582 N.E.2d 685, 687; *Webber v. Armstrong World Industries, Inc.* (1992), 235 Ill. App. 3d 790, 795, 601 N.E.2d 286, 290; *Gresham v. Kirby* (1992), 229 Ill. App. 3d 952, 954, 595 N.E.2d 201, 203.

The sidewalk in question is located on the south side of Maine Street between Emory Drive and Woodlawn Street, in a residential area. In ruling on the motion for summary judgment, the trial court considered the evidence in the light most favorable to plaintiffs and found the discrepancy between the levels in the sections of the sidewalk to be 1⅞ inches.

The Illinois Supreme Court has stated:

"A municipal corporation is not bound to keep its streets and sidewalks absolutely safe for persons passing over any part of them, its duty being to exercise ordinary care to keep them reasonably safe for persons who exercise ordinary care. (*Brennan v. City of Streator*, 256 Ill. 468; *Boender v. City of Harvey*, 251 id. 228; *Kohlhof v. City of Chicago*, 192 id. 249.) Municipal corporations, not being insurers against accidents, are not liable for every accident occurring within their limits from defects

in the streets, but the defects must be such as could have been foreseen and avoided by ordinary care and prudence on the part of the municipalities. (*Boender v. City of Harvey, supra*; 43 Corpus Juris, (Municipal Corporations,) sec. 1785(4).) Sidewalks are intended for the use of pedestrians and the duty of a city is to build and maintain them in a reasonably safe condition for the purpose for which they are intended." (*Storen v. City of Chicago* (1940), 373 Ill. 530, 534-35, 27 N.E.2d 53, 55.)

Slight inequalities in the levels of sidewalks and other minor defects frequently found in traversed areas are not actionable unless the defect in the sidewalk is such that a reasonably prudent person should anticipate some danger to persons walking on the sidewalk. (*Warner v. City of Chicago* (1978), 72 Ill. 2d 100, 103-04, 378 N.E.2d 502, 503; *Arvidson v. City of Elmhurst* (1957), 11 Ill. 2d 601, 604-05, 145 N.E.2d 105, 106-07.) Both the *Warner* and *Arvidson* cases, and others which have discussed similar issues, make it clear there is no mathematical standard which can be used to determine when a defect is so minor as to not be actionable. (*Warner*, 72 Ill. 2d at 104, 378 N.E.2d at 503; *Arvidson*, 11 Ill. 2d at 604, 145 N.E.2d at 106.) The surrounding circumstances, particularly whether the sidewalk is located in a commercial or residential neighborhood and the anticipated volume of traffic on the sidewalk, are to be taken into consideration.

A one-fourth-inch crack, in the absence of other aggravating circumstances, is too slight to be actionable as a matter of law. (*Gleason v. City of Chicago* (1989), 190 Ill. App. 3d 1068, 1069-72, 547 N.E.2d 518, 519-20.) The stumbling point for most of these cases seems to occur as the defect approaches two inches.

In *Arvidson*, the cause was properly submitted to the jury when the sidewalk was located in a business district and the defective slab of concrete slanted downward toward the street so that it was about one inch below the adjoining slab at one end and two inches below the adjoining slab at the other end nearer the street. *Arvidson*, 11 Ill. 2d at 609, 145 N.E.2d at 109.

*Warner* involved a sidewalk in a residential area. In that case, the Illinois Supreme Court suggested that had the evidence established that the defect, a difference in the level of the adjoining slabs, was 1⅛-inch maximum height, then no action would lie. However, since the jury could reasonably find that the defect was two inches, as defendant testified, and the defect was obscured by one-half inch of recently fallen snow, the evidence presented a question for the jury. *Warner*, 72 Ill. 2d at 104-05, 378 N.E.2d at 503-04.

■ In his dissent to *Warner*, Justice Ryan observed that the size of the defect could change with the temperature, with the seasons, and from year to year, and it would be a virtually impossible burden to place on a municipality to inspect and repair hundreds of miles of sidewalks. (*Warner*, 72 Ill. 2d at 111-12, 378 N.E.2d at 507 (Ryan, J., dissenting).) Common sense would dictate that the economic burden placed on a municipality for such an undertaking would be significant. Recently, the Illinois Supreme Court has discussed the factor of foreseeability in the determination of the existence of a duty. In *Hutchings v. Bauer* (1992), 149 Ill. 2d 568, 570-71, 599 N.E.2d 934, 935, the supreme court stated:

> "The trial court granted summary judgment to defendants. On appeal, the appellate court reversed the trial court, concluding that 'it was reasonably foreseeable to defendants under the present facts that plaintiff would deviate from the road as he did in the normal incident of travel.' (212 Ill. App. 3d 172, 179.) The issue in this case, however, is not foreseeability. The issue is duty. In other words, whether defendants, by erecting the barrier, breached a duty which they owed to plaintiff. We conclude that no duty was breached. Accordingly, we reverse the appellate court and reinstate the judgment of the trial court.
>
> As this court noted in *Lamkin v. Towner* (1990), 138 Ill. 2d 510, 522-23, while the foreseeability of an injury is an important factor in determining whether a duty exists, the existence of a legal duty is not to be bottomed on the factor of foreseeability alone. Instead, we must balance the foreseeability of the harm against the burdens and consequences that would result from the recognition of a duty. (See also *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375.)"

Several cases are relied on by plaintiffs to establish that the defect in this case should not be determined to be so minor as to not be actionable. In all of these cited cases, the issue was not removed from the jury.

In *Martinkovic v. City of Aurora* (1986), 150 Ill. App. 3d 589, 593-94, 502 N.E.2d 61, 63-64, the discrepancy in the level of adjoining slabs of concrete was, at most, slightly greater than 1⅜ inches, but the city had an express policy of repairing all defects exceeding one inch in length or depth. The facts in this case do not disclose such a policy, although the trial court did find that the affidavits submitted showed the defendant made an effort to keep abreast of defects in the sidewalk. In *Repinski v. Jubilee Oil Co.* (1980), 85 Ill. App. 3d 15, 20-21, 405 N.E.2d 1383, 1387, there was a hole described as 1½ inches

deep and 1½ feet in diameter located at a driveway to a gas station. The case at bar does not involve such a hole. In *Baker v. City of Granite City* (1979), 75 Ill. App. 3d 157, 159-60, 394 N.E.2d 33, 33-35, the hole or crack in which plaintiff caught her heel was described by her as four inches wide and 1¾ to 2 inches deep and by the superintendent of streets as one to three inches wide and 1¼ inches deep. The court found that there was a conspicuous crack in a sidewalk near a busy intersection in the *commercial* district, but noted that this defect might not be actionable if it were located in a residential area. In *Hess v. City of Chicago* (1981), 101 Ill. App. 3d 426, 427, 428 N.E.2d 581, 582-83, the crack in a sidewalk located in a predominantly *commercial* block was described by plaintiff as having an elevation of about 1½ to 2 inches.

Finally, in *West v. City of Hoopeston* (1986), 146 Ill. App. 3d 538, 497 N.E.2d 170, this court considered a case involving a concrete and asphalt sidewalk which was approximately 20 to 30 years old, uneven in places, and which was located near a car wash. The elevation between the slabs varied from one-fourth to nine-sixteenths of an inch and there was a two-inch gap between the slabs instead of the usual one-fourth-of-an-inch gap. Inside the gap were loose, pebble-like particles, some of which could be loosened by hand. The defendant argued that, since the discrepancy in level was, at most, only nine-sixteenths of an inch and where plaintiff fell it was only one-fourth of an inch, the defect was not actionable as a matter of law. This court agreed with the plaintiff, however, that the width as well as the depth of the area must be considered. While the defect in level was deemed slight, this court determined that a reasonable person could anticipate a danger to persons walking on the sidewalk as a result of the broken area between the slabs. (*West*, 146 Ill. App. 3d at 541-43, 497 N.E.2d at 172-74.) In the case at bar, the facts do not include a gap with loose pebbles in addition to the discrepancy in level of the slabs of concrete. There was also evidence in *West* that, depending on which witness the jury believed, from 15 to 50 people used the sidewalk on a daily basis. (*West*, 146 Ill. App. 3d at 540-41, 497 N.E.2d at 172-73.) Neither party in this case has called this court's attention to any fact in the record, other than the residential character of the neighborhood, which would suggest the volume of traffic over and upon the subject sidewalk, and a review of the record has not disclosed any such fact.

■ After balancing the burden on the defendant to inspect or repair many miles of residential sidewalk with the foreseeability of harm to result from the defect described in the case at bar, we agree with the trial court that the defect is too minor to be actionable, as a

matter of law. In light of this determination, this court need not consider the remaining issues raised by plaintiffs.

For the foregoing reasons, the judgment of the circuit court of Adams County is affirmed.

Affirmed.

LUND and GREEN, JJ., concur.