2022 IL App (2d) 200575-U
No. 2-20-0575
Order filed March 10, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ELLEN L. SCHRADER, | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 15-L-359 |
| | ) | |
| CITY OF ROCKFORD, | ) | Honorable |
| | ) | Lisa R. Fabiano, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: Summary judgment was proper for municipal defendant on plaintiff's complaint alleging that she fell because of the dangerous condition of defendant's sidewalk; plaintiff failed to produce evidence that defendant created the condition or had actual or constructive notice of it.

¶ 2    Plaintiff, Ellen L. Schrader, sued defendant, the City of Rockford, after she lost her balance and fell on displaced sidewalk slabs. Defendant moved for summary judgment, arguing that no evidence was presented that it had notice of the displaced sidewalk slabs. The trial court granted defendant's motion for summary judgment, and this timely appeal followed. At issue is whether defendant is liable because it either (1) created the dangerous condition, *i.e.*, the displaced slabs,

or (2) had actual or constructive notice of the displaced slabs in reasonably adequate time to have taken measures to repair them before plaintiff's fall. We hold that no genuine issue of material fact was presented as to either basis of liability and that summary judgment for defendant was proper.

¶ 3                                     I. BACKGROUND

¶ 4     Around 11 a.m. on May 30, 2012, plaintiff was walking eastbound on the north sidewalk along West Jefferson Street in downtown Rockford. As she approached the corner of North Main Street, she stepped on displaced slabs of the sidewalk, lost her balance, fell, and was injured. Plaintiff sued defendant, claiming that defendant was negligent in failing to fix the sidewalk and provide safe passage for pedestrians. Plaintiff alleged that the roots of a tree abutting the sidewalk pushed the sidewalk up and caused a dangerous condition, of which defendant had actual or constructive notice.

¶ 5     Defendant answered the complaint, asserting that, under section 3-102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/3-102(a) (West 2014)), it was not liable to plaintiff for her injuries because it did not have notice of the displaced sidewalk slabs before plaintiff's fall. Later, defendant moved for summary judgment, claiming, again, that it lacked notice. Attached to defendant's motion were (1) plaintiff's deposition and photographic exhibits; (2) two depositions of Mark Stockman (who was street superintendent of defendant's public works department and later was that department's director); and (3) an affidavit from Gary Kovanda (who previously worked with plaintiff).

¶ 6     Plaintiff stated during her deposition that, as she walked eastbound on the sidewalk along West Jefferson Street, she traversed a sidewalk slab that was abutting a bricked area surrounding a tree. As she stepped off that slab onto the adjoining slab, she lost her balance and fell because

the adjoining slab was lower. She circled on a photo the particular portion that caused her fall. Plaintiff claimed that the displacement was not visible as she approached the slab. Plaintiff admitted that she was not aware that anyone had informed defendant about the condition of the sidewalk before she fell.

¶ 7    The photos attached to plaintiff's deposition depict a section of the sidewalk along West Jefferson Street. One slab of the sidewalk abuts a bricked area surrounding a tree. The portion circled by plaintiff is at the junction of that slab with the slab immediately to the east. Plaintiff specifically cited the end of the joint nearest the brick, where the west slab is higher than the east slab, as the cause of her fall. At the opposite corner of the west slab, along the brick, the concrete is cracked.

¶ 8    Stockman indicated that he reviewed the entries in defendant's "Hansen" software system, which is used to report various issues including needed sidewalk repairs, and found no complaints about the sidewalk before plaintiff's fall. Stockman stated that the first-time defendant was made aware of a problem with the sidewalk was after plaintiff fell. When asked whether the tree roots could have caused the displaced sidewalk slabs, Stockman responded, "Possibly."

¶ 9    Kovanda, plaintiff's co-worker, stated in his affidavit that he talked to plaintiff after she fell. "Sometime" later, Kovanda attended an event in Rockford. In coming and going, he walked the sidewalk on West Jefferson near North Main Street. On his first pass, he "did not notice that the sidewalk *** was in a very deteriorated condition until [he] stepped onto it." On his second pass, he observed that the sidewalk "was in a very dilapidated condition." "It looked like someone dropped a heavy weight onto [the sidewalk] breaking it into many pieces."

¶ 10    In response to defendant's summary judgment motion, plaintiff argued that, because defendant created the dangerous condition by planting the tree next to the sidewalk, it was

irrelevant whether defendant received notice. Alternatively, plaintiff contended that, because the displaced sidewalk slabs were in a busy area, defendant must have had notice of the condition. Citing *Monson v. City of Danville*, 2018 IL 122486, plaintiff argued that defendant was required to have a policy in place to inspect the sidewalk. Plaintiff asserted that defendant's Hansen system was substandard at best.

¶ 11 Attached to plaintiff's response were the depositions of Mitchell Leatherby (defendant's current street superintendent) and Glenn Trommels (head of defendant's information technology department) and photographs showing eastward and westward views of the sidewalk. Leatherby stated during his deposition that he was never consulted about repairing the portion of the sidewalk at issue. He indicated that he first learned about the sidewalk after plaintiff fell, when defendant's attorney spoke to him about it. Moreover, Leatherby first learned from the photos attached to plaintiff's response that a new tree had been planted by the sidewalk. Trommels stated during his deposition that defendant uses the Hansen system to log, among other things, service requests, complaints, and applications for permits. Trommels indicated that if a complaint about a sidewalk is made in any way—such as by phone, email, fax, or through the city's website—that complaint is logged into the Hansen system. The complaint then remains in the system indefinitely. That is, the Hansen system does not automatically delete complaints, though it is possible to manually delete them (Trommels had no knowledge of any complaint being manually deleted). As for the photos, the displacement that plaintiff identified as causing her fall is not visible in the eastward view. However, the displacement is visible in the westward view.

¶ 12 The trial court granted defendant's motion for summary judgment. The court found (1) no evidence that defendant created the sidewalk's defective condition; (2) no evidence that defendant had notice of the sidewalk's condition; (3) Stockman's speculation that the tree's roots might have

created the problem did not create a genuine issue of material fact; and (4) *Monson* was inapplicable.

¶ 13                                                    II. ANALYSIS

¶ 14     On appeal, plaintiff challenges the grant of summary judgment. "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Zameer v. City of Chicago*, 2013 IL App (1st) 120198, ¶ 13. "The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of material fact actually exists." *Id.* ¶ 12. "A party is entitled to summary judgment where 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Id.* ¶ 13 (quoting 735 ILCS 5/2-1005(c) (West 2014). "The[se] documents are construed strictly against [the] movant and in the light most favorable to the nonmovant." *Id.* Moreover, "[w]here a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied." *Id.* "We review a ruling on summary judgment *de novo*." *Id.* ¶ 12.

¶ 15     Plaintiff argues that defendant's motion for summary judgment should have been denied because a genuine issue of material fact exists as to whether defendant knew about the displaced sidewalk slabs before plaintiff fell. Defendant invokes section 3-102(a) of the Act and argues that, because it never had notice of the displaced sidewalk slabs, it cannot be liable to plaintiff for her injuries.

¶ 16     Under the Act, a municipality " 'shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition.' " *Id.* ¶ 14 (quoting 745 ILCS 10/3-102(a) (West 2014)). Actual notice under

"[s]ection 3-102(a) requires proof that the defendant had timely notice of the specific defect that caused the plaintiff's injuries, not merely the condition of the area." *Id.* ¶¶ 16, 17-18. Constructive notice arises "[w]here a condition has existed for such a length of time, or was so conspicuous, that authorities exercising due diligence might have known of it." *Id.* ¶¶ 15, 19.

¶ 17　Although "[t]he question of notice is generally one of fact, [it] becomes a question of law if all the evidence when viewed in the light most favorable to the plaintiff so overwhelmingly favors the defendant *** that no contrary verdict could ever stand." *Id.* ¶ 14. "The burden of proving notice is on the [plaintiff]." *Id.*; *Monson*, 2018 IL 122486, ¶ 23.

¶ 18　Plaintiff argues that summary judgment was improper because the record creates an issue of material fact as to whether defendant either (1) created the dangerous condition of the sidewalk or (2) had actual or constructive notice of the displaced sidewalk slabs in adequate time to have taken measures to repair the sidewalk before plaintiff fell.

¶ 19　We first consider whether defendant created the dangerous condition. As defendant notes, there is nothing in the record indicating, as plaintiff has alleged, that roots from the tree abutting the sidewalk caused the displacement of the sidewalk slabs. Although Stockman indicated that the tree's roots might "[p]ossibly" have caused the displacement, his speculation simply was not enough to withstand defendant's motion for summary judgment. See *Townsend v. Anderson*, 2019 IL App (1st) 180771, ¶ 23 ("To survive a motion for summary judgment, the nonmoving party need not prove his case at this preliminary stage of litigation; however, the plaintiff must present some evidentiary facts, not mere speculation or conjecture, to support each element of his cause of action, which would arguably entitle him to a judgment.").

¶ 20　The cases plaintiff relies on to support her claim that defendant created the displaced sidewalk slabs are distinguishable. See *Harding v. City of Highland Park*, 228 Ill. App. 3d 561,

563, 571 (1992) (city's affirmative act of removing a water meter cover and failing to properly replace it caused the plaintiff's injury such that no actual or constructive notice of the condition is required); *Dziewatkowski v. City of Chicago*, 109 Ill. App. 2d 405, 407, 415-16 (1969) (where city piled a mound of clay and dirt on the parkway next to sidewalk after installing new lighting system, which resulted in material being washed onto the sidewalk so that it became slippery and dangerous, city liable for improper formations caused in an artificial and unnatural way). Here, even if defendant planted the tree and its roots caused the displacement of the sidewalk slabs over time, planting a tree is not like misplacing a meter cover (as in *Harding*) or piling a mound of clay and dirt next to a sidewalk (as in *Dziewatkowski*). That is, the mere act of planting a tree cannot be said to dispense with actual or constructive notice that the tree's roots had actually displaced the sidewalk slabs years later. See *Harding*, 228 Ill. App. 3d at 569; *Dziewatkowski*, 109 Ill. App. 2d at 415-16. We conclude that no genuine issue of material fact exists as to whether defendant created the dangerous condition.

¶ 21    We likewise conclude that no triable issue exists as to whether defendant had actual or constructive notice of the displaced sidewalk slabs. First, there was no evidence of actual notice. Defendant received no complaints about the displaced sidewalk slabs before plaintiff fell. Indeed, the first-time defendant even heard about the displacement was after plaintiff fell. Summary judgment, therefore, was proper on the issue of actual notice. See *Zameer*, 2013 IL App (1st) 120198, ¶ 18.

¶ 22    Nor can we conclude that defendant had constructive notice of the displaced sidewalk slabs. Although defendant claims that the displaced slabs were in a busy area, no evidence indicated how long the slabs were displaced. There is no basis for plaintiff's contention that the slabs must have been displaced for a long time because the disruption from the tree roots would

have been gradual. As noted, nothing but sheer speculation indicates that the tree's roots were even the source of the displacement. Moreover, no evidence indicated that defendant should have known of any issue with that portion of the sidewalk. Kovanda attested that the sidewalk was extensively cracked when he observed it at some unidentified time *after* plaintiff fell. His description, however, is not supported by the photos, which reveal that the height differential between the slabs was minimal and that the west slab was cracked only at the corner. This suggests that Kovanda either was attesting to a portion of the sidewalk not involved in plaintiff's fall, or that the sidewalk fell into greater disrepair sometime after plaintiff was injured. Without evidence indicating the length of time that the sidewalk slabs were displaced or that the poor condition of the sidewalk was conspicuous, we cannot conclude that a genuine issue of material fact exists as to whether defendant had constructive notice. *Id.* ¶ 21.

¶ 23     We also note that *Monson* is inapplicable here. In *Monson*, the City of Danville had a program to inspect and repair sidewalks in its downtown area. *Monson*, 2018 IL 122486, ¶ 4. While the program was in place, the plaintiff tripped and fell on a sidewalk that appeared to fall within the parameters of the program. *Id.* ¶¶ 3-5. At issue on appeal to our supreme court was whether the defendant was entitled to summary judgment because it was immune from liability pursuant to sections 2-109 and 2-201 of the Act (745 ILCS 10/2-109, 2-201 (West 2014)). *Monson*, 2018 IL 122486, ¶ 14. Those sections concern a city's immunity from liability for an injury caused by its employee's determination regarding policy or exercise of discretion. *Monson*, 2018 IL 122486, ¶¶ 17-18. In addressing whether the defendant was immune from lability, the court made clear that section 3-102(a) of the Act is separate and distinct from sections 2-109 and 2-201 of the Act. *Id.* ¶ 25. That is, while sections 2-109 and 2-201 confer immunity, section 3-102(a) "merely codifies the common-law duty of a local public entity to maintain its property in a

reasonably safe condition." *Id.* ¶¶ 24-25. Thus, while a municipal defendant must prove under sections 2-109 and 2-201 that it is immune from liability, it is the plaintiff that must establish under section 3-102(a) that the municipality had notice. *Id.* ¶¶ 23, 34. The court in *Monson* ultimately held that, given the absence of "evidence of the [defendant's] decision-making process with respect to the specific site of plaintiff's accident," the defendant failed to meet its burden of establishing immunity. *Id.* ¶¶ 38-39. Thus, the defendant was not entitled to summary judgment based on its claim of discretionary immunity. *Id.* ¶ 39.

¶ 24 Here, unlike in *Monson*, defendant has not claimed immunity under section 2-109 and 2-201 of the Act. Moreover, to the extent that *Monson* addressed a system for fixing damage to city property, *Monson* is not helpful here. Unlike in *Monson*, where the evidence indicated that the plaintiff fell on a sidewalk covered by the defendant's sidewalk-inspection program, nothing indicates that the displaced sidewalk slabs on which plaintiff fell were subject to any program to fix sidewalks in the Rockford area.

¶ 25 Citing section 3-102(b) of the Act (745 ILCS 10/3-102(b) (West 2014)), plaintiff argues that a municipality must have an effective system in place to check on its property's unsafe conditions and that, without such a system in place, a municipality is liable for injuries caused by these unsafe conditions. Section 3-102(b) of the Act has no such requirement. "[A]lthough section 3-102(b) describes circumstances by which the defendant may prove its lack of constructive notice, it does not relieve the plaintiff of the initial burden, codified in section 3-102(a), of proving the defendant's actual or constructive notice." *Krivokuca v. City of Chicago*, 2017 IL App (1st) 152397, ¶ 60. Without proof of notice, "[s]ection 3-102(a) shields [a municipality] from liability, regardless of whether the [the municipality] proved a reasonably adequate inspection system pursuant to section 3-102(b)." *Id.*

¶ 26                                    III. CONCLUSION

¶ 27    For the reasons stated, we affirm the judgment of the circuit Winnebago County.

¶ 28    Affirmed.